The next case for argument is 24-1492, CPC Patent Technologies v. Assa Abloy. Mr. Coyle, please proceed. Thank you, Your Honors. Good morning. May it please the Court. My name is Steve Coyle. I'm here on behalf of the appellant's CPC. This is obviously a case involving the exact same patent and, frankly, even the exact same claim limitation as the argument that preceded us. But this is a different case. We have a different petitioner. We have a different petition, different prior art, different arguments, different experts, different evidence. I appreciate that, but what if we were to hypothetically affirm the other case, how does that result impact your case? My understanding is that in the prior case, there are only four of the 20-039 patent claims at issue. So if you were to affirm in that case, it would only invalidate four claims. So you have left, for the purposes of this appeal, one, two, 19, and 20? Or is that? Those would be the ones that issue. Those would be the ones that would have. Those come out. I apologize. Those would be the ones that would be invalidated if you were to affirm. The remaining claims still need to be adjudicated. The specific issue in this case, Your Honor, I don't believe there's any dispute, is whether or not the particular prior art to ZHU discloses the defining limitation. Importantly, the defining limitation in this case was construed by the Board the same way that it was construed in the prior case, that the card information itself must be what establishes the memory address at which the fingerprint data will be stored. In the blue brief at 27, you claim that the Board's, I'm quoting you, finding that ZHU in fact discloses how the card information biometric signature are stored in the database, is contradicted by Apelli's expert so-called admission that Sue is silent on how a new user record is created during enrollment. It looks to me like you take that out of context. The full sentence in the record pertaining to the governing standard of ZHU is, although Sue is silent on how a new user record is created, and then it says it would have been obvious for a ZHU using simple known options for creating database records. Why not quote the full sentence? The admission is the first part of the sentence. The rest of his opinion in that portion, and I'm looking right now, this is from Appendix 1360. This is paragraph 33 of Mr. Lipoff's second declaration. And the importance of that, Your Honor, is that essentially, and this is what we have argued, is that ZHU does not disclose that it is the card information or for purposes of ZHU, that's the employee ID number. That itself establishes the memory location. And this portion that we quote is exactly, because all ZHU says is that they're- But the board finding refers to Sue's disclosure of how information storage happens. Yes. But the so-called admission is how a new user record is created, right? The admission goes to how a new user, in other words, during enrollment, how the new user record with the stored fingerprint data is created. And what's important about paragraph 33- But why are they inherently contradictory? It's establishing that even Mr. Lipoff acknowledges that ZHU itself is silent as to how this new user record is created. In other words, how the fingerprint data is stored. And then he must transition in his paragraph where you quoted, Your Honor, he transitions to what he calls simple known options. Because the information isn't in ZHU itself. So he has to go outside of ZHU to what he refers to as simple known options to find the defining limitation. And as we address in our brief, Your Honor, very importantly, and I, you know, encourage scrutinization of paragraphs 33 and 34 of Mr. Lipoff's second declaration at appendix 1360 and 61. This is relied on by the Board for the proposition that Mr. Lipoff does, in fact, explain that there are previous database structures that are, as he says, simple known options. But careful review of those two paragraphs of Mr. Lipoff's declarations, which are important to the Board's decision, shows that they do not amount to substantial evidence. They are entirely conclusory. So if he had cited one article in the literature, would that have been sufficient? It's a hypothetical. It would depend what the article said. Maybe it would. Perhaps it would. But he cited zero. I mean, the point is he cited nothing. You qualify. He was qualified as an expert in this area. He knows what a proceeding is. We're not disputing whether he is a person of skill in the art. And, again, my friend, the Petitioner, has argued that we're overly rigid in our view of the evidence that would be substantial evidence from Mr. Lipoff, and he's entitled to rely on his education and experience. I would simply say to that, he has to at least say what that education and experience is particular to the issues that he's opining about. Otherwise, we're just left with conclusions, bare, naked, potentially hindsight-driven conclusions. Just out of idle curiosity, how did he qualify as an expert? He has ‑‑ well, the Board qualified him. I didn't qualify him. I understand, but you were there and you didn't. Yeah, we did not challenge his level of expertise. But that is a different issue. Being an expert generally qualified to testify to the issues in this case, respectfully, I would submit, Your Honor, is not the same thing as actually providing substantial evidence to support what he vaguely refers to as simple known options. What was his record for qualification? Where is it? Is it in the record? I have to confess, I do not recall, but I assume that his CV is in the record somewhere. Perhaps not in the appendix record, but below. We did not challenge his qualifications generally as an expert. One question I have on this very point is that Mr. Lipoff here is, it seems to be going beyond Sue, the disclosure of Sue. He is right here not saying that there is something necessarily inherent in Sue about how he would necessarily go about creating a new user record. He instead seems to be saying, okay, Sue has some missing content on that score, but guess what? It would be obvious to try any one of the series of known solutions for that. And so that appears to be deviating from relying on Sue as, in fact, teaching that point. And in a sense, for this limitation, they were relying on Sue, but now it's really Sue Prime. Some obvious modification of Sue. Yes, Your Honor, that's exactly right. And that's what we think happened ultimately throughout the Board's decision, is that the Board acknowledges really that the disclosure in Sue is simply of relationally associating the card information or the employee ID with fingerprint data. But it doesn't establish where, and so both the Board and Mr. Lipoff have to go outside of Sue to these alleged simple known options. That's what I'm trying to understand. Is this a new theory, or is this part of the unpatentability theory all along? Is it a new theory from the petitioner, you're asking, Your Honor? Right. This is all part of what was in the record below. In other words, Mr. Lipoff's second declaration was in the record below. I'm just wondering if this particular argument didn't surface until Mr. Lipoff submitted his second declaration, which is going to be pretty deep into the IPR. I'll defer to the petitioner to identify if they believe that that argument was made below where they believe that it was. The issue that I would point out about this, and I would say that this circumstance is very similar to this Court's 2019 decision in the TQ Delta case, which is cited in our briefs. In that case, the Board — I'm sorry, the Court held that conclusory expert testimony does not rise to the level of substantial evidence. And there, very similar to here, there the expert opined that it would have been obvious to combine two pieces of prior art using — I don't think we've really gotten to the point of the case yet, which is the fact that the Board relied on this inassociation with language to essentially equate that through some inference and logic to matching up with the claim on the petition. Can you just speak to that? Yes, Your Honor. Thank you. Yeah. I think a legal error that the Court made — that the Board made below is that after it correctly defined the defining limitation to require that it must be the card information that establishes the memory address where fingerprint data will be stored, it essentially embarks on what we think is only characterized as hindsight reasoning, looking at ZOO, and suddenly essentially injects into the case this notion that simply relationally storing two things together satisfies the defining limitation. And that's an improper expansion of its claim construction. I mean, we heard in the prior panel that there — with the user account number first, and then the biometric data comes in second, and then because the record's already been created and with the account number, you know where to store the biometric data. Did you sort of echo the theme of the prior field? Yeah. I think that's — And whether or not that theory is correct, is that the essence of the theory here? It's unclear to me from the Board's decision, Your Honor, if it is literally saying that the simple relationship between each other qualifies as an establishment of a memory address, or if what the Board is saying is by a transitive property, because we know where the employee ID information is going to be stored, we therefore know where the fingerprint data will be stored. If it's the first, that it's just the two things together satisfies the set or establish, that's an improper expansion of the original correct claim construction, and there is no intrinsic support for the notion that simply putting two things together in memory satisfies the defining limitation, and I would refer the Court to just Figure 4, for example, of the 039 patent, which very clearly shows that the card data must establish a specific address in memory. If it's the latter scenario, in other words, if the Board concluded that there is something about Zhu's employee ID that is itself tethered to a memory address, that finding is absolutely not supported by any substantial evidence. There is nothing in Zhu. The main relevant paragraph of Zhu is paragraph 26. So you're running out of time. Let me just ask you, assume hypothetically that we would agree with you that the Board misapplied the claim construction. Where does that leave us on remand? Does that leave us to have them do over? We know there are other combinations there that haven't yet been adjudicated by the PTAB. So what does remand look like to you, if we accept your argument with respect to defining? If it's a claim construction issue, it's a legal issue that the Court is entitled to review and determine de novo. So we think that the evidence that's in the record clearly shows that Zhu does not. Well, it's not really a claim construction issue. We agree with the claim construction. The question is how you apply the claim construction to Zhu. So it's not really just de novo claim construction. Assuming that the Board agrees that the Court's original construction is the correct construction and that it improperly expanded it in its finding, I think that there's enough evidence in the record to look at and determine that, in fact, there is no such disclosure that Zhu establishes a specific memory address, and you could reverse. On that issue? Yes. Then leaving, of course, the other combinations to me. Correct, Your Honor. So there's other pending proposed grounds of unpatentability that do not rely on the Zhu reference for teaching this limitation of the claim, depending on the carved information, the memory location. I don't really think they all rely on Zhu. I was just going to say my recollection, Your Honor, is that they all rely on Zhu. But other pieces of prior art and combinations. Correct, Your Honor. Okay. Thank you, Your Honor. Let me share something that I found right here. Good morning. May it please the Court. Lionel Latham here from Fagan for Appellees. We believe that the issue here really boils down to the Zhu reference in combination with the expert testimony of Mr. Libov. Can you just answer the housekeeping question of what if we were to conclude that there's no substantial evidence that Zhu teaches this one defining memory location limitation? What would that mean for the other grounds of unpatentability that were in the petition but the Board did not address? Would they all fall because each one of those proposed grounds necessarily relies on this particular reference and only this particular reference for meeting this particular limitation? They do, but if that were to occur, we believe that it should be remanded at least for the Board to look at the combinations to see whether or not there is still a remaining issue on the defining step. Because Zhu is the main reference, but there are combinations, and that would need to go at least back to the Board. Okay. Thank you, Your Honor. So here I would submit, Your Honors, that we do have substantial evidence based upon the Zhu reference, and the reason is that the Zhu reference was relied upon by the Board for two particular paragraphs, paragraph 20 and 26. Paragraph 20 of the Zhu reference defines a database 44 and explains that in that database there is a table where memory locations are defined based upon user information, and that is what the defining step that we're looking at is talking about. According to the claim itself, it is defining based upon a memory location, and we have Zhu using a database table that's defining based upon a memory location in a table, and that's paragraph 20. Is this your argument in the brief read 22-23? You make an argument that the Board didn't actually equate the terms associated with define, set, or establish. You said that it instead held that the Board held it was the effect of the association that disclosed limitation 1C, and do you really think that something having the effect of limitation 1C is enough to disclose it? Yes, Your Honor, because the claim construction was sets or determines where the fingerprint is stored, so that's the claim construction. It was proposed by CPC. It was agreed to by us, and the Board adopted it, and there's no dispute on the claim construction. So the fact that the Board looked at the words associated with in Zhu and said, well, we see that you have a user card that has user information, and that goes to a database that is a table, and you cannot put the fingerprint information into Zhu unless you have the user information that tells you where in the database, where in the table in the database to put the fingerprint information. That is exactly what the patent is doing. The patent is basically, it's like a U.S. Postal Service post office box where you have a lot of boxes, and you have an identification number that's individualized to the owner of that box. Well, you know where to put your fingerprint inside of the box in Zhu and in the patent because you have an identification code of the user. I guess the concern I have still is that the fact that the Zhu reference talks about these two pieces of data being stored in relation to each other or in association with each other doesn't quite tell me why it is necessarily so that the card data, the account number, is somehow channeling or guiding the system on where to store the fingerprint data. Just the fact, you know, the end result is these two pieces of data get stored somehow in association with each other, but that outcome doesn't necessarily tell me how those two pieces of data got there in the first place. How did the fingerprint data wind up getting stored where it did get stored? And to what extent did the user account number channel the system to put the fingerprint data in that particular location? That's kind of the mystery that I'm trying to unwind, and I don't quite see how the phrase, one thing being stored in association with another thing, tells me the answer to that mystery. And, Your Honor, I think the answer to your question is throughout the Zhu reference, if we look at paragraph 5 through 13, it is indicated that you cannot place the fingerprint information into the database until you have the preliminary identification information, which is clarified in paragraph 26. And I'm quoting from paragraph 26. It says if the user does not have such a number, a user identification number, one is assigned to this. Where are you in column 6? Column 7. Oh, column 7. Paragraph 26, column 7, line starting at 8, appendix 947. Okay. Line 8? Starting at line 8 of column 7. And so if I read from there, quote, if the user does not have such a number, and that's referring to the user identification number, one is assigned at this stage. The account number is stored in the database 44 in association with the user's fingerprint image data. Okay. So here it's clear that you cannot place the fingerprint information into Zhu until you have the user identification number. This is required in the enrollment stage. In fact, at the top of paragraph 26, it states that during the enrollment procedure it's required to have the user number. That's at both column 6, lines 51 through 55. Is it also required at the enrollment stage to have the fingerprint data? It's not required that you have the fingerprint data, only that you have the user information. Once you obtain the fingerprint data, then you know where to put the fingerprint data because you have the user information that is defined by paragraph 20, which states that the database is a table that associates each user number. I'm reading from column 4 of appendix 945 starting at line 53. And it says, quote, the database is basically a table that associates each user number with a stored fingerprint image or with selected distinctive attributes or features of the user's fingerprint image. End quote. So, again, Sue is making clear that unless you have that user information, that user identification that tracks to the database 44, you cannot put the fingerprint in. And that's why the board concluded. It also seems like the enrollment procedure necessarily requires the fingerprint data as well before you can move forward. I mean, that's line 1 of column 7. The enrollment procedure requires that each user enroll by presenting a finger to the fingerprint sensor 16. So, in that way, you need both pieces of data for the enrollment process, and then it then becomes very unclear why one piece of data is sort of like the master piece of data and then the other one follows along with whatever the master piece of data is doing. But as you've described it, Judge Chen, that's exactly what we're looking at in the claim for the claim element of defining a location in memory to put the fingerprint data. And as you just described it now, that is exactly what Sue says, and that is exactly what the board found when they concluded that that element was satisfied. So, I mean, you noted during my friend's argument, you said, well, are we talking about Sue or are we talking about Sue Prime? I mean, what we're talking about here is just Sue, not Sue Prime. What Mr. Lipoff was doing when he was explaining in his supplemental declaration about the ways that a database could be created, he was addressing questions or issues that had been raised by CPC. Why does he say it's silent is how it is created? Why didn't he make your argument here? I'm sorry, Your Honor? Your expert says, although Sue is silent on how a new user record is created. But then he went on to explain that there were two different alternatives for creating those database records. But remember, we're not talking just about creating, we're talking about defining. So what had happened was in the original declaration, Mr. Lipoff had explained how the Sue reference saves, using the user information, the fingerprint data in the database. So that was the original declaration. Then there were issues, questions raised by CPC. And then in his supplemental declaration, one of the things they said is they said, well, we don't even know how these things are created. And he said, oh, well, you know, one of ordinary school would know how to create these records, but that's not the issue. The issue is how you define where to place the information. So he was just explaining. And so the propped quotes that Your Honor noted, which they did six times, I mean, you know, the explanation for that by Mr. Lipoff was further defined when he explained that there are two different alternatives. So in effect, you're saying that Lipoff's testimony in the second declaration is irrelevant to Sue's coverage in any case? I wouldn't say it was irrelevant. It was explanatory of him addressing the issues that had been raised by the patent owner. That's why. But what you're saying is that those issues raised by the patent owner weren't valid issues. They were not. That's correct, Your Honor. That's your argument. That is correct, Your Honor. The board somewhat relied on this passage in the second declaration by Mr. Lipoff, right, and talked about the obvious solutions idea. And, again, everywhere where you look where the board was referring to those issues, they were addressing questions or issues that had been raised by the patent owner. So the primary finding by the board was we find that there is a reference in Sue that satisfies the defining limitation. That's what they found. And then when they went on to make all their explanatory comments, that's what you're seeing in the blue brief. So all of these arguments that my friend on the other side brought up, they're all arguments where the board had said something in response to what he had said or that the patent owner had said at the board. And that's why there's some dissimilarity between the primary argument, which is does Sue satisfy, and these side arguments that Your Honor should ask about. So then just one more time, how would you summarize the grounds for finding that Sue meets this limitation? In summary, Your Honor, the Sue, as the board found, describes both with respect to the defining limitation where the fingerprint information is stored, and it's stored in a database 44, and that's paragraph 20 of Sue. Also, the board found how. And how the fingerprint information is stored is by using the user number, the user information that is obtained in Sue, which is tracked to a memory location, and then putting the fingerprint information there. That is how the board found both the where and the how the defining limitation was satisfied below, which we believe there's substantial evidence to support that. And in addition to the where and the how, the board also relied upon Mr. Lukoff, which gave further clarification of that. So all of that in combination, we believe, is they're all factual findings, and they're all considered under substantial evidence, and we believe that they do satisfy what a reasonable mind would accept as support for finding this limitation. Do you win without the expert? Oh, certainly. Yes, we do, Your Honor. Yes. I believe there's also one other issue that was raised during the questioning of my friend from the other side, and that was on the educational background of our expert. And just to put on the oral argument record, that's Appendix 984 through 988. And in the reply brief, page 11, the other side says, quote, to the extent that he, talking about Mr. Lipov, may have been relying upon his own educational experience, he offers no detail or even a summary of that educational experience, end quote. Well, in his declaration, his original declaration, which is at the appendix that I cited, he provides six pages of educational background and his historical knowledge and his background on the use of databases. And, in fact, I was surprised to see this last night when I calculated it. He has 53 years of experience. So I think that our expert does qualify under the educational experience. With that, Your Honor, I think that I have covered all of the issues I wanted to cover, and unless you have any questions. Thank you. Thank you. Well, let's do a few minutes for that. Good morning again, Your Honors. I'd like to just start with the discussion that was just had about ZOO and just make a couple of points. First, you heard the reference to Paragraph 20 of ZOO. Paragraph 20 of ZOO is about verification. This is a process that takes place after enrollment, and certainly by the time you're at the verification stage, there is some memory address correlation between the ID and the fingerprint data. But what's important, and I think you were alluding to this through your questions, Judge Chen, is that at the time of enrollment, as my friend just said, the only thing that ZOO requires is that there be both employee ID information and fingerprint data. You can't store them in association with each other if you don't have them both. But as your questions alluded, there is no disclosure in ZOO that it is, in fact, the employee ID, i.e., the card information, that itself establishes the specific memory address in ZOO's memory database where the user's fingerprint data will be stored. Is it possible that each set of data is somehow establishing where the other one gets stored and that they're being stored together, and so to store them in some together relational way, they're both sort of defining for each other the ultimate memory location? Of course anything's possible, and there isn't enough information to necessarily know. I mean ZOO only discloses so much, and it doesn't disclose that. It doesn't disclose how specifically the memory address for the fingerprint data is set or established, and that's the failure of ZOO. It just doesn't tell us that information. That's exactly what is disclosed and claimed in the 039 patent. Again, if you look at Figure 4 of the 039 patent, it couldn't be more graphically clear that the card information specifically establishes a particular address in the memory database, and that's necessary because I think in the prior case there was a discussion about the fact that part of the point of the invention of the 039 patent is to be able to quickly go to just the one set of fingerprint data that you want to verify during a verification phase. I want to also come back to the point about Mr. Lipov's testimony and whether it was responding to something. I mean that's how these proceedings go, right? You have opening arguments, responses, and I don't think there's any indication that something is less important or less material just because it shows up in a second declaration instead of a first declaration. What matters here, Your Honors, is that at Appendix 36-37, the Board in fact relied on paragraphs 33 and 34 of Mr. Lipov's second declaration. They cited to it as support for its opinion here, and so if that testimony But if that's responsive to your arguments, then it may not be core necessary to the decision. Isn't that correct? Again, I think the Board did one of two things, and it's frankly a little confusing to me as to what it did. It either came to a conclusion that simply relationally associating the fingerprint and employee ID of Zhu satisfies the defining limitation. We've explained why we think that that is absolutely an incorrect conclusion. Or it found that there must be some information within the Zhu employee ID number that therefore causes a tethering of the fingerprint to some memory address. But to get to that finding, Your Honor, they had to rely on Mr. Lipov's second declaration. So if that's the way they analyzed it, then it is core to their finding. Thank you. We thank both sides of the case. Thank you, Your Honors.